UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

Case Number: 22-21452-CIV-MARTINEZ-BECERRA

DAVID EFRON

    Plaintiff,
v.

MADELEINE CANDELARIO and
MICHELLE PIRALLO DI CRISTINA,

    Defendants.
_____/

**ORDER ON DEFENDANTS' MOTION TO DISMISS**

**THIS CAUSE** came before this Court on Defendants' Motion to Dismiss the Complaint with Prejudice for Lack of Subject Matter Jurisdiction and for Failure to State a Claim (the "Motion"), (ECF No. 11). This Court has reviewed the Motion, pertinent portions of the record, and applicable law and is otherwise fully advised of the premises. Accordingly, after careful consideration, the Motion is **GRANTED IN PART** and **DENIED IN PART** and the Complaint is **DISMISSED WITHOUT PREJUDICE** for the reasons set forth herein.

**I.    FACTUAL BACKGROUND**

Through this action, Plaintiff seeks what he believes to be his "pound of flesh,"[1] nearly two decades overdue by his account. (*See* Compl. ¶¶ 1–11, ECF No. 1.) Although lacking Shakespearean refinement, the Complaint tells a story fit for adaptation into a telenovela:[2] a vast conspiracy to defraud Plaintiff stemming from his divorce proceedings against Defendant Madeleine Candelario (Plaintiff's ex-wife), spanning multiple decades, and involving Ms. Candelario; certain non-party Puerto Rican judges, if not the entire Puerto Rican judiciary; and

---

[1] *See* William Shakespeare, *The Merchant of Venice* act 4, sc. 1, l. 320.
[2] A telenovela is a Spanish-language soap opera.

Defendant Michelle Pirallo Di Cristina, Ms. Candelario's divorce attorney. (*See id.* ¶ 4.)

Plaintiff, "an attorney with a national law practice," married Ms. Candelario in Puerto Rico in 1983. (*Id.* ¶ 2.) Plaintiff and Ms. Candelario were married between 1983 and 2001. (*Id.* ¶ 39.) On June 22, 1999, Ms. Candelario filed two divorce petitions: one in the Court of First Instance in Puerto Rico and another in the Eleventh Judicial Circuit Court in and for Miami-Dade County, Florida, case number 99-12806-FC 28. (*Id.* ¶ 39; *see* Compl. Ex. 1 at 1, ECF No. 1-2.) In the Miami divorce proceeding, then-Florida Circuit Court Judge Robert Scola, Jr., ordered Plaintiff to pay Ms. Candelario $750,000 as a "lump sum provisional distribution of marital assets . . . without prejudice to [Plaintiff] to seek reimbursement at the time of the final hearing in Puerto Rico[,]" (the "Miami Divorce Court Order"). (Compl. ¶ 2.) Plaintiff tendered the $750,000 to Ms. Candelario pursuant to the Miami Divorce Court Order. (*Id.*) On June 4, 2001, the divorce decree was finalized. (*Id.* ¶ 41.) On August 26, 2002, the Miami divorce court issued an order for change of venue to Puerto Rico. (*Id.* ¶¶ 2, 42.)

Without any reference to when, Plaintiff alleges that, following her divorce, Ms. Candelario started "co-habiting with Charles Cordero, then a Puerto Rico appellate court judge." (*Id.* ¶ 46.) Plaintiff alleges that "[b]ecause [Judge] Cordero was a member of the Puerto Rican judiciary, [Ms.] Candelario . . . had a powerful conduit through which [Ms. Pirallo] could illegally manipulate the transferred property distribution proceedings and the Puerto Rican courts to enrich herself at [Plaintiff's] expense. (*Id.* ¶ 4.) In short, Plaintiff alleges that Ms. Candelario, Ms. Pirallo, and Judge Cordero "joined in a scheme and conspiracy to deny [Plaintiff] his civil and due process rights in the Puerto Rican courts by exerting influence over the ongoing court proceedings relating to" the divorce proceedings. (*Id.* ¶ 5.) Because, however, "[Judge] Cordero could not directly interfere in the case between [Plaintiff] and [Ms.] Candelario before the court

in Puerto Rico, the scheme needed to recruit another Puerto Rican judge to manipulate the divorce proceedings to ensure that [Plaintiff] would be denied due process . . . ." (*Id.* ¶ 7.)

To that end, Plaintiff alleges that Judge Nestor Aponte Hernandez was the "perfect candidate" to join the fraudulent scheme because Judge Aponte was also an appellate judge in Puerto Rico and Judge Aponte's brother, Jorge Aponte Hernandez, faced public corruption charges at the time. (*Id.* ¶ 8.) Plaintiff alleges that, in exchange for Judge Cordero providing Mr. Aponte with "legal machinations to facilitate his efforts to avoid justice" by ruling "in favor of the criminally indicted brother[,]" Judge Aponte would give "corruptly favorable and legally suspect financial rulings for the benefit of [Judge] Cordero's girlfriend, [Ms.] Candelario . . . ." (*Id.* ¶¶ 8–9.) Plaintiff neatly summarizes this scheme as a "classic *quid pro quo*: I save your brother and you help me and my girlfriend." (*Id.* ¶ 10.) Plaintiff alleges that the scheme "was attended and facilitated by [Defendants] through a coordinated series of sham court filings and representations with [Judge] Cordero and [Judge] Aponte." (*Id.* ¶¶ 9, 11.) To that end, Plaintiff alleges that Ms. Pirallo's "court filings opened the way to [Plaintiff's] finances, while Judge Aponte would place his robe-clad foot in the door to ensure it stayed open." (*Id.* ¶ 11.)

In March 2004, Mr. Aponte, then a Puerto Rican government official, was indicted on public corruption charges. (*Id.* ¶ 12.) Mr. Aponte moved to dismiss the criminal indictment, and the trial court denied the motion. (*See id.*) In 2004, a panel of the Puerto Rican Court of Appeals (without Judge Cordero) affirmed the denial of the motion to dismiss. (*Id.*; Compl. Ex. 5 at 10–14, ECF No. 1-6); *see also Puerto Rico v. Aponte Hernandez*, No. KLCE0301441, 2004 WL 1136645, at *12–13 (P.R. Cir. Mar. 17, 2004). "A few months later," Mr. Aponte again moved to dismiss the criminal indictment, and the trial court again denied the motion. (Compl. ¶ 13.) Mr. Aponte appealed the denial of his second motion to dismiss, and in January 2005,

3

another panel of the Puerto Rican Court of Appeals found in Mr. Aponte's favor in a per curiam opinion—this time, Judge Cordero was on the panel. (*Id.* ¶¶ 13, 19; Compl. Ex. 6 at 10–13, ECF No. 1-7); *see also Puerto Rico v. Aponte Hernandez*, No. KLCE0401289, 2005 WL 602892, at *6 (P.R. Cir. Jan. 28, 2005). This, Plaintiff alleges, shows that Judge Cordero "was able to hold up his end of the bargain to Judge Aponte." (Compl. ¶ 14.) Ultimately, Mr. Aponte was not found guilty, and he subsequently filed an unsuccessful lawsuit against the prosecution for alleged malicious prosecution. (*Id.* ¶ 16.)

Then, "[d]ays after" Mr. Aponte's appeal was decided in his favor by, as Plaintiff alleges, "[Judge] Cordero's panel, [Judge Cordero's] girlfriend and co-inhabitant, [Ms.] Candelario, through her attorney [Ms.] Pirallo, filed a motion with the trial court in San Juan requesting a $50,000 monthly 'advance' on her share of the undetermined marital assets from her former marriage to [Plaintiff]." (*Id.* ¶ 17.) Plaintiff states that her request was more than double the request she made before the case was transferred to Puerto Rico. (*Id.* ¶ 17 n.1.) Plaintiff alleges that this new request was "unprompted by any change in fact or law, was facially contrary to the Florida court order, and faced no legitimate prospect of success." (*Id.* ¶ 17.) But, as Plaintiff alleges, "[i]t did not matter." (*Id.*) Plaintiff alleges that Defendants' request for $50,000 advances was "not to succeed in the trial court, but to set the stage for an appeal of the trial court's expected denial of their motion, so that the case would eventually land before Judge Aponte . . . whose brother's fate hung in the balance depending on the decision of [Judge] Cordero's appellate panel." (*Id.*)

Plaintiff alleges that the Puerto Rican Court of First Instance denied Ms. Candelario's Motion and Ms. Candelario appealed. (*Id.* ¶ 20.) "In an opinion authored by Judge Aponte himself," Plaintiff alleges, "the appellate panel reviewing [Ms.] Candelario's far-fetched demand

4

for more money from [Plaintiff] was able to complete the *quid pro quo*." (*Id.* (emphasis removed).) The Complaint refers to two opinions Judge Aponte authored in the subject appeal: a January 31, 2006, opinion, (Compl. Ex. 7, ECF No. 1-8); *Candelario del Moral v. Efron*, Nos. KLCE0500605, KLCE0500616, 2006 WL 536597 (P.R. Cir. Jan. 31, 2006), and a February 16, 2006, opinion, (Compl. Ex. 8, ECF No. 1-9); *Candelario del Moral v. Efron*, Nos. KLCE0500605, KLCE0500616, 2006 WL 1044530 (P.R. Cir. Feb. 16, 2006). Plaintiff argues that the January 31, 2006, opinion and February 16, 2006, amended opinion (collectively, the "Aponte Opinions") finalized the alleged fraud scheme against him by awarding Defendants' requested $50,000 advances. "The goal of the scheme and conspiracy was achieved: denying [Plaintiff] due process and access to the courts to ensure he was powerless to stop the court-enforced theft." (Compl. ¶ 21.) As Plaintiff alleges, "Judge Aponte thus fulfilled his end of the *quid pro quo*, abusing his judicial office to enrich [Ms.] Candelario and [Judge] Cordero." (*Id.* ¶ 54.)

Plaintiff alleges that "[t]he scheme was wildly successful" because Mr. Aponte was free, and Defendants have "seized approximately $7 million" from Plaintiff. (*Id.* ¶ 22.) Plaintiff alleges that the Aponte Opinions "remain in effect and continue to damage [Plaintiff] every day." (*Id.* ¶ 54.) And Plaintiff alleges that the Aponte Opinions were final as he has "no ability to overturn the decision[s]." (*Id.* ¶ 58.) To be sure, Plaintiff alleges that the scheme is "still in operation to this very day[,]" (*id.* ¶ 23), and "cloak[ed]" with "the armor of legal force[,]" (*id.* ¶ 56). Plaintiff states that Defendants "continue to use the corrupt Aponte [Opinions] as both sword and shield in their ongoing effort to rob [him]." (*Id.* ¶ 58.) Defendants' use of the Aponte Opinions, Plaintiff alleges, has denied his due process rights to this day. (*Id.* ¶ 62.) To continue their scheme, Plaintiff alleges that they have "sought seemingly endless continuances,

5

continuously sought recusal of judges, and engaged in a deliberate scheme to delay in the courts of Puerto Rico." (*Id.* ¶ 63.) As Plaintiff states, "[u]ntil [Plaintiff's] due process rights are restored by the *abrogation of the Aponte* [*Opinions*], [Defendants] will continue to have free reign to use the corrupt orders in that case to enlist the courts of Florida and Puerto Rico as unwitting co-conspirators in their illegal scheme." (*Id.* ¶ 66 (emphasis added).) Indeed, Plaintiff alleges that this conspiracy is so far-reaching that this Court, and not an appropriate appellate court, "is the only venue in which Plaintiff can receive fair and impartial justice." (*Id.* ¶ 27.)

By this action, Plaintiff hopes to end the alleged fraud scheme and compel this story's denouement. In his attempt to do so, Plaintiff pleads four claims for relief against Defendants: deprivation of procedural due process under 42 U.S.C. § 1983 (Count I); conspiracy to deny civil rights under § 1983 (Count II); civil conspiracy (Count III); and unjust enrichment (Count IV). (*Id.* at 16–20.) Now, Defendant moves to dismiss the Complaint with prejudice for lack of subject matter jurisdiction and for failure to state plausible claims for relief. (*See generally* Mot., ECF No. 11.)

## II. LEGAL STANDARD

A pleading must include "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2). To survive a motion to dismiss for failure to state a claim, a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face . . . .'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). While a complaint "does not need detailed factual allegations," it must provide "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action . . . ." *Twombly*, 550 U.S. at 555.

A court considering a Rule 12(b) motion is generally limited to the facts contained in the

complaint and the exhibits attached thereto, including "documents referred to in the complaint which are central to the claim." *See Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d 949, 959 (11th Cir. 2009) (citing *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997) (per curiam)). When ruling on a motion to dismiss, a court must accept the plaintiff's allegations as true and evaluate all plausible inferences derived from those facts in the plaintiff's favor. *Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1335 (11th Cir. 2012); *St. Joseph's Hosp., Inc. v. Hosp. Corp. of Am.*, 795 F.2d 948, 954 (11th Cir. 1986). Courts are, nevertheless, "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986) (citing *Briscoe v. LaHue*, 663 F.2d 713, 723 (7th Cir. 1981)). "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555–56 (cleaned up).

Motions under Rule 12(b)(1) attached this Court's subject matter jurisdiction to consider the case before it. *See* Fed. R. Civ. P. 12(b)(1). Motions to dismiss for lack of subject matter jurisdiction "can be based upon either a facial or factual challenge to the complaint." *McElmurray v. Consol. Gov't of Augusta-Richmond Cnty.*, 501 F.3d 1244, 1251 (11th Cir. 2007) (citing *Williamson v. Tucker*, 645 F.2d 404, 412 (5th Cir. May 1981)). Where the attack on the complaint is facial, "the plaintiff is left with safeguards similar to those retained when a Rule 12(b)(6) motion to dismiss for failure to state a claim is raised." *Id.* (quoting *Williamson*, 645 F.2d at 412). A facial attack on a complaint requires a court to look and see if the plaintiff "sufficiently alleged a basis of subject matter jurisdiction, and the allegations in his complaint are taken as true for the purposes of the motion." *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990) (quoting *Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 511 (5th Cir.

7

1980)). When the attack on a complaint is factual, however,

> the trial court may proceed as it never could under 12(b)(6) or Fed. R. Civ. P. 56. Because at issue in a factual 12(b)(1) motion is the trial court's jurisdiction—its very power to hear the case—there is substantial authority that the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case. In short, no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims.

*Garcia v. Copenhaver, Bell & Assoc.*, 104 F.3d 1256, 1261 (11th Cir. 1997) (quoting *Lawrence*, 919 F.2d at 1529). While Defendants couch their 12(b)(1) motion as a factual attack, the universe of facts upon which the Motion relies is contained in the Complaint and attachments thereto; therefore, the Motion presents a facial attack, and this Court must take the allegations in the Complaint as true. *See Lawrence*, 919 F.2d at 1529.

**III.    DISCUSSION**

Defendant moves to dismiss the Complaint with prejudice because (1) this Court lacks subject matter jurisdiction over this action under the *Rooker-Feldman* doctrine, (Mot. 7–10); (2) the claims in the Complaint are time-barred, (*id.* at 10–15); and (3) Plaintiff failed to state causes of action under § 1983, (*id.* at 15–24). In opposition, Plaintiff responds that (1) the *Rooker-Feldman* doctrine does not apply to this action because the Complaint seeks to "have his due process rights vindicated, not to have this Court sit in review of the Puerto Rican Courts[,] (Resp. 5–7, ECF No. 18); (2) his claims are not time-barred because the events alleged in the Complaint are "continuing acts that extend the statute of limitations[,]" (*id.* at 8–10); and (3) the Complaint sufficiently states plausible claims for relief, (*id.* at 10–16).

The *Rooker-Feldman* doctrine is derived from *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923), and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983). The *Rooker-Feldman* doctrine precludes district courts "from exercising appellate jurisdiction over

8

final state-court judgments." *Nicholson v. Shafe*, 558 F.3d 1266, 1268 (11th Cir. 2009) (quoting *Lance v. Dennis*, 546 U.S. 459, 463 (2006)). Specifically, the doctrine applies to "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005). "The doctrine extends not only to constitutional claims presented or adjudicated by a state court, but also to claims that are 'inextricably intertwined' with a state court judgment." *Siegel v. LePore*, 234 F.3d 1163, 1172 (11th Cir. 2000) (en banc) (citing *Feldman*, 460 U.S. at 482 n.16). "A claim is inextricably intertwined if it would 'effectively nullify' the state court judgment . . . or it 'succeeds only to the extent that the state court wrongly decided the issues." *Casale v. Tillman*, 558 F.3d 1258, 1260 (11th Cir. 2009) (citation omitted) (first citing *Powell v. Powell*, 80 F.3d 464, 467 (11th Cir. 1996); and then citing *Goodman ex rel. Goodman v. Sipos*, 259 F.3d 1327, 1332 (11th Cir. 2001)).

After reviewing Plaintiff's claims in the contexts of his factual allegations, this Court finds that all the claims in the Complaint are inextricably intertwined with the validity—or, rather, the alleged invalidity—of the Aponte Opinions both of which were issued in connection with enforcing the finalized divorce decree. (*See* Compl. ¶ 66); *Casale*, 558 F.3d at 1261 (affirming district court's dismissal for lack of subject matter jurisdiction under *Rooker-Feldman* doctrine where plaintiff sought to invalidate post-divorce decree state-court order). Here, despite attempting to argue that he did not file this action to challenge the Aponte Opinions, Plaintiff—in the same paragraph—states that "[h]e is suing based on the corruption that invaded those rulings and led to his being defrauded." (Resp. 5.) As the Complaint unequivocally sets forth, "until [Plaintiff's] due process rights are restored by *the abrogation of the Aponte* [*Opinions*],

9

[Defendants] will continue to have free reign to use the corrupt orders in that case to enlist the courts of Florida and Puerto Rico as unwitting co-conspirators in their illegal scheme." (*Id.* ¶ 66 (emphasis added).) Plaintiff is precisely "the sort of 'state-court loser[]' the *Rooker-Feldman* doctrine was designed to turn aside" as granting Plaintiff relief in this action would necessarily require this Court "effectively nullify[ing]" the Aponte Opinions. *See Casale*, 558 F.3d at 1260–61 (first quoting *Exxon*, 544 U.S. at 284; and then quoting *Powell*, 80 F.3d at 467).

In his attempt to avoid dismissal under the *Rooker-Feldman* doctrine, Plaintiff relies on decisions from the Third and Seventh Circuits that recognize a fraud exception to the doctrine, namely *Davit v. Davit*, 173 F. App'x 515 (7th Cir. 2006), and *Great Western Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159 (3d Cir. 2010). In *Davit*, the Seventh Circuit held that "the *Rooker-Feldman* doctrine does not apply to claims that a 'defendant in a civil rights suit "so far succeed in corrupting the state judicial process as to obtain a favorable judgment."'" *Davit*, 173 F. App'x at 517 (citing *Loubser v. Thacker*, 440 F.3d 439, 441 (7th Cir. 2006)). Likewise, in *Great Western*, the plaintiff's claims involved the defendants' alleged procurement of state court judgments based on the defendants' fraudulent misrepresentations. *See Great W.*, 615 F.3d at 167–68, 173. There, the Third Circuit held that "[t]he fact that [the d]efendants' actions, rather than the state-court judgments, were the source of [the plaintiff's] injuries is alone sufficient to make *Rooker-Feldman* inapplicable here." *Id.* at 173. But, the Eleventh Circuit has routinely rejected such a "fraud exception" to the *Rooker-Feldman* doctrine. *E.g.*, *Casale*, 558 F.3d at 1261 ("Other circuits have recognized an exception to the [*Rooker-Feldman*] doctrine where the state court judgment is 'void *ab initio* due to the state court's lack of jurisdiction,' . . . but our circuit has never adopted that exception." (citations omitted)); *Ferrier v. Cascade Falls Condo. Ass'n*, 820 F. App'x 911, 914 (11th Cir. 2020) ("[W]e have not recognized a fraud exception to

the *Rooker-Feldman* doctrine, and we decline to do so now.")  In fact, the Eleventh Circuit has expressly stated, albeit in an unpublished decision, that "such an exception would effectively gut the doctrine by permitting litigants to challenge any state-court judgment in federal court merely by alleging that 'fraud' occurred during the state-court proceedings." *Ferrier*, 820 F. App'x at 914.  This Court finds the reasoning in *Ferrier* persuasive and does not now accept Plaintiff's invitation to recognize a fraud exception to the *Rooker-Feldman* doctrine.  Therefore, the *Rooker-Feldman* doctrine applies to Plaintiff's claims, notwithstanding his "intent to invoke an extrinsic fraud exception to that doctrine."  *See Wint v. BAC Home Loans Serv., LP*, No. 15-CV-80376, 2015 WL 3772508, at *2 (S.D. Fla. June 17, 2015).

Plaintiff's requested relief, "actual damages," (Compl. 20), or "monies wrongfully received from [Plaintiff,]" (*see, e.g.*, *id.* ¶ 92), are rooted in the Aponte Opinions, which Plaintiff repeatedly describe as "corrupt rulings[,]" (*see, e.g.*, *id.* ¶ 80).  The only way Plaintiff could be damaged is if the Aponte Opinions (ordering Plaintiff to pay Ms. Candelario $50,000 advances) were wrongful.  While Plaintiff argues that his claims do not require this Court to find the Aponte Opinions were wrongful because he sued Defendants for their individual wrongdoing, this argument holds no water: Were this Court to grant Plaintiff's requested relief, it would necessarily follow that the Aponte Opinions were entered in error.  Moreover, this Court finds that Plaintiff had a reasonable opportunity to raise their claim in the state-court proceeding, especially considering the Aponte Opinions were entered approaching two decades ago.  *See Casale*, 558 F.3d at 1260.  Accordingly, this Court lacks jurisdiction over this action.  The Motion is, therefore, granted in part in this respect, and the Complaint is dismissed without prejudice.  *See Scott v. Frankel*, 606 F. App'x 529, 533 ("[A] *Rooker-Feldman* dismissal is a dismissal for lack of subject matter jurisdiction, and '[a] dismissal for lack of subject matter

jurisdiction is not a judgment on the merits and is entered without prejudice.'" (citing *Stalley v. Orlando Reg'l Healthcare Sys.*, 524 F.3d 1229, 1232 (11th Cir. 2008))). Because this Court has no subject matter jurisdiction over Plaintiff's claims, this Court need not reach Defendants' remaining arguments in support of dismissal, so the Motion is denied in part as to those arguments.

IV. **CONCLUSION**

Accordingly, it is **ORDERED AND ADJUDGED** that:

1. The Motion, (ECF No. 11), is **GRANTED IN PART** as set forth herein.

2. The Complaint, (ECF No. 1), is **DISMISSED WITHOUT PREJUDICE** for lack of subject matter jurisdiction.

3. The Clerk is **DIRECTED** to **CLOSE** this case and **DENY** all pending motions as **MOOT**.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 3rd day of February, 2023.

                                                        JOSE E. MARTINEZ
                                                        UNITED STATES DISTRICT JUDGE

Copies provided to:
All Counsel of Record